UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE YONO and
SALWA YONO,

        Plaintiffs,

vs.

Case No. 13-13218
HON. GERSHWIN A. DRAIN

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR LONG
BEACH MORTGAGE TRUST 2004-6,
1111 and JPMORGAN CHASE BANK,
N.A., SUCCESSOR TO WASHINGTON
MUTUAL BANK,

        Defendants.
_____/

## ORDER GRANTING DEFENDANT DEUTSCHE'S MOTION TO DISMISS [#15] AND GRANTING JPMORGAN'S MOTION FOR SUMMARY JUDGMENT [#28]

**I.    INTRODUCTION**

On June 14, 2013, Plaintiffs, George and Salwa Yono, filed the instant action before the Oakland County Circuit Court, seeking to quiet title to real property located at 6195 Timberwood N., West Bloomfield, Michigan ("the Property"). On July 26, 2013, Defendants, Deutsche Bank National Trust Company ("Deutsche") as Trustee for Long Beach Mortgage ("Long Beach") and JPMorgan Chase Bank ("JPMorgan"), successor to Washington Mutual Bank ("WAMU"), removed the instant case to this Court.

Presently before the Court is Defendant Deutsche's Motion to Dismiss [#15], filed on October 2, 2013. This matter is fully briefed. Plaintiffs filed a Response on October 30, 2013. Deutsche filed a Reply on November 22, 2013. Also before the Court is Defendant

JPMorgan's Motion for Summary Judgment [#28], filed on December 11, 2013. This matter is also fully briefed. Plaintiffs filed a Response on January 22, 2014, and Defendants filed a Reply on February 5, 2014. The Court heard oral arguments on February 26, 2014.

For the reasons stated below, the Court will GRANT Deutsche's Motion to Dismiss [#15] and GRANT JPMorgan's Motion for Summary Judgment [#28].

## II. FACTUAL BACKGROUND

On August 5, 2004, Plaintiffs were approved for a $620,000 loan from Michigan National Bank ("Michigan National"). In October 2004, Michigan National discharged the mortgage to Long Beach. In 2006, Long Beach merged with WAMU. In 2008 WAMU was closed by the Office of Thrift Managment, and the Federal Deposit Insurance Corporation ("FDIC") was assigned its assets. On September 28, 2008, JP Morgan purchased WAMU's assets, including the mortgage in dispute, from FDIC. JP Morgan assigned the mortgage to Deutsche on October 11, 2011, and the document was recorded on October 20, 2011.[1]

Plaintiffs subsequently failed to make loan payments and defaulted on their mortgage. As a result of Plaintiffs default, JPMorgan offered Plaintiffs the opporunity to participate in the Home Affordable Modification Trial Period Plan (the "TPP"). However, the Plaintiffs were found to be not eligible for TPP under the Home Affordable Modification Program ("HAMP") guidelines. Plaintiffs were also found ineligible to participate in alternative loan modification programs.

Deutsche sent Plaintiffs a notice on September 11, 2012, which stated that Plaintiffs could contact Deutsche to discuss a potential modification of the loan pursuant to MICH.

---

[1] Plaintiffs dispute that the mortgage was ever recorded and instead argue Deutsche only has a trustee relationship in regards to the Property.

COMP. LAWS § 600.3205a. Plaintiffs did not respond to the September letter. Deutsche foreclosed on the Property by advertisement and a Sheriff's Sale was held on December 18, 2012. Deutsche purchased the Property at the Sheriff's sale. Plaintiffs' redemption period expired on June 18, 2013, and they filed the instant Complaint on June 14, 2013.

## III. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* FED. R. CIV. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland*, 502 F.3d at 548. (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations

contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id*.

### B. Defendant Deutsche's Motion to Dismiss

#### 1. Sheriff's Sale Claim

On June 18, 2013, Plaintiffs redemption period ended without them redeeming. When there is no redemption, the Sheriff's Deed vests in the grantee and the grantee is assigned all rights and title of the mortgagor that existed at the time the mortgage was given. *Hanson v. Huetter*, 339 Mich. 130, 133-34, 62 N.W.2d 663 (1954). In foreclosure situations, after a Sheriff's Sale, any lawfully entitled person under the mortgage may redeem the property by paying the requisite amount within the prescribed time limit. In the instant case, the Plaintiffs had 6 months to redeem the Property. MICH. COMP. LAWS § 600.3204. If the mortgaged property is not redeemed within the allotted time, the former owner's rights in the property are extinguished and the Sheriff's Deed vests with the grantee all rights, title, and interest.

Deutsche argues that Plaintiffs "lack standing to bring this quiet title action because the expiration of the redemption period terminated any and all interest plaintiffs had in the subject property." *Richardson v. Wells Fargo Bank, N.A.*, No. 2:13-cv-10234-GAD-MAR,

2013 WL 3814275, *5 (E.D. Mich. July 22, 2013). Filing a lawsuit prior to the expiration of the redemption period does not toll or avoid the redemption requirement. In *Awad v. Gen. Motors Acceptance Corp.*, No. 302692, 2012 WL 1415166, *4 (Mich. Ct. App. Apr. 24, 2012), the plaintiff filed a complaint days before the expiration of the redemption period. The *Awad* court explicitly held that filing a suit prior to a redemptive period's end does not avoid or toll the redemption requirement. *Id.* at *3. The facts of *Awad* are analogous to the instant case, as Plaintiffs redemptive period expired without the Plaintiffs redeeming the subject property. Therefore, unless Plaintiffs can establish fraud, irregularity, or prejudice, they no longer have any right or title in the Property

Plaintiffs argue that they still have standing to challenge the foreclosure sale despite the fact that the property was not redeemed within the redemption period because Deutsche committed fraud, and a party does not need to exercise its right to redeem when there is a showing of fraud or irregularity. *Freeman v. Wozniak*, 241 Mich. App. 633, 637, 217 N.W. 777 (2000), *see also Overton v. Mortg. Elec. Registration Sys.*, No. 284950, 2009 WL 1507342, *1 (Mich. Ct. App. May 28, 2009). However, after the expiration period, the only element that can be challenged is the procedure of the sale itself. *Reid v. Rylander*, 270 Mich. 263, 267, 258 N.W. 630 (1935). Additionally, any "defects or irregularities in a foreclosure proceeding result in a foreclosure that is voidable, not void *ab initio*[,]" or null from the beginning. *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115, 825 N.W.2d 329 (2012). To establish such defect or irregularities, "plaintiffs must show that they were prejudiced by defendant's failure to comply with MCL 600.3204. To demonstrate such prejudice, [plaintiffs] must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 115-

16. In the instant case, Plaintiffs have not identified any irregularity in the foreclosure proceeding. Moreover, the only violation Plaintiffs allege is based on Michigan's loan modification statute, MICH. COMP. LAWS § 600.3205a, which Deutsche argues does not directly relate to foreclosure proceedings, but only state pre-foreclosure requirements. Additionally, even if Plaintiffs had alleged an actual irregularity in the foreclosure proceeding, Deutsche maintains that they still would have been unable to set aside the Sheriff's Sale because they have not asserted the requisite prejudice under *Kim*, 493 Mich. at 115-16. While the Court has the power to rescind a foreclosure sale, even after the expiration of the redemption period, such an action hinges on a showing that the sale itself was invalid based on fraud or irregularity. *Overton*, No. 284950 at *1. Plaintiffs have made no such showing. Therefore, Plaintiffs are not entitled to an Order setting aside the Sheriff's Sale.

### 2. Quiet Title Claim

To state a claim for quiet title, a plaintiff must prove he has title to the property which is superior to the title claims of all other persons with an interest in the property. *Beulah Hoagland Appleton Qualified Pers. Residence Trust v. Emmet Cnty. Rd. Com'n*, 236 Mich. App. 546, 550, 600 N.W.2d 698 (1999). The plaintiffs have the burden of proof and must make a prima facie case of title. *Id.* Deutsche argues that in the instant case, Plaintiffs no longer have any title to the Property because the redemptive phase passed without the Plaintiffs redeeming. Consequently, Deutsche asserts that it would be unfair if the title was quieted without the Plaintiffs repaying the mortgage. The Plaintiffs put the property up as collateral and it would be contrary to public interest to permit them to use equity to achieve an inequitable result. *See Richards v. Tibaldi*, 272 Mich. App. 522, 536, 726 N.W.2d 770

(2006) ("If there are indications of unfairness or overreaching on an equity plaintiff's part, the court will refuse to grant him or her equitable relief").

In *Yuille v. American Home Mortg. Services, Inc.*, 483 Fed. Appx. 132, 135 (6th Cir. 2012), the plaintiff brought a quiet title claim after defaulting on his mortgage. The court held that the plaintiff was barred from recovery by the doctrine of unclean hands as he had "received $3.6 million in exchange for the note and mortgage, failed to pay that debt as he agreed, and then sought judicial assistance in avoiding his contractual obligations." *Id.* The same analysis can be applied in the instant case, as Plaintiffs obtained a loan in exchange for their mortgage, defaulted on said loan, and are now attempting to use judicial means to improperly avoid their contractual obligations.

Plaintiffs point to *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F.3d 949 (6th Cir. 2012), to support their argument that any violation in how the foreclosure was handled voids the foreclosure, resulting in a redemption period that never began. Plaintiffs apply *Mitan* by maintaining that if Deutsche cannot show that the foreclosure by advertisement process was properly followed, then Plaintiffs' interest and title to the land is superior. However, Plaintiffs critically fail to mention that *Mitan* has been expressly overruled as a point of law. *Kim*, 493 Mich. at 113, 115-16. The court in *Kim* held that a subsequent mortgagee's failure to fully comply with a statute regarding foreclosure by advertisement resulted in a foreclosure sale that was voidable. *Id.* Consequently, *Kim* is recognized as having overruled *Mitan*'s determination that a structural defect renders a foreclosure void rather than voidable. *Mourad v. Homeward Residential Inc.*, 517 Fed. Appx. 360, 367 (6th Cir. 2013). Plaintiffs Quiet Title claim will be dismissed.

   **3.**  **Loan Modification Claim**

Deutsche argues that Michigan's loan modification statute does not require a lender to modify a loan, nor does it give a plaintiff a cause of action for damages or other relief after the Sheriff's Sale occurs. MICH. COMP. LAWS § 600.3205 requires that (1) a lender consider a borrower for a loan modification prior to commencing foreclosure by advertisement, MICH. COMP. LAWS § 600.3205a(1), and (2) it includes a specific enforcement mechanism that provides borrowers with an opportunity to request judicial foreclosure if the foreclosing party fails to comply with the loan modification provision. MICH. COMP. LAWS § 600.3205c(8). Additionally, unless the borrower files a complaint seeking relief before the Sheriff's Sale, nothing prevents the lender from foreclosing by advertisement. MICH. COMP. LAWS § 600.3204. MICH. COMP. LAWS § 600.3205 does "not in and of itself create an independent cause of action to nullify a foreclosure sale after the expiration of the redemption period." *Tipton v. Flagstar Bank, FSB*, No. 305911, 2012 WL 4800169, *1 (Mich. Ct. App. Oct. 9, 2012).

In the instant case there was no violation of MICH. COMP. LAWS § 600.3205. Plaintiffs admit they received the MICH. COMP. LAWS § 600.3205a notification sent on September 11, 2012. Additionally, Plaintiffs were considered for loan modification via the Trial Period Plan conducted prior to the Sheriff's Sale, on September 1, 2009. Plaintiffs sole remedy was to request that the foreclosure by advertisement be converted into a judicial foreclosure. However, this relief is no longer available because the Sheriff's Sale was held in December 2012. The only remaining relief available to Plaintiffs is what the statute provides.

Plaintiffs vehemently disagree with Deutsche's interpretation of MICH. COMP. LAWS § 600.3205, and argue that Deutsche should not be permitted to move forward with

foreclosure by advertisement under MICH. COMP. LAWS § 600.3204, unless they have fully complied with MICH. COMP. LAWS § 600.3205. Plaintiffs base their statutory interpretation of MICH. COMP. LAWS § 600.3205c on the analysis in *Roller v. FNMA, BAC Home Loans Servicing, LP,* No. 4:12-cv-11236, 2012 WL 5828625 (E.D. Mich. Feb. 14, 2012), which interpreted the statute to require "that a borrower be provided with 'a copy of any calculations[, in regards to a potential loan modification,] made by the person under this section.'" *Id.* at 4 (citing MICH. COMP. LAWS § 600.3205c(5)(a)). In *Roller*, the defendants argued that even if they did not provide the plaintiff with the required calculations, she was not harmed because she did not exercise her right to redeem the property, and therefore would have been in no better position if she had gotten the calculations. *Id.* at *5. The *Roller* court rejected the defendants' argument and said that if the defendants' calculations were wrong, the plaintiff may have been able to meet the requirements for loan modification, or raise an argument that she met the modification requirements and consequently the property should not have been subject to foreclosure. *Id.* In reliance on *Roller*, Plaintiffs argue that, at the very least, the Court cannot conclude at this early stage whether or not the alleged defect had prejudicial effects and should therefore deny Deutsche's Motion to Dismiss.

However, *Roller* is an unpublished decision from June 2012. In October 2012 and March 2013, *Kim* and *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355 (6th Cir. 2013), held in binding, published decisions that borrowers must allege that they were prejudiced as a result of the foreclosure proceedings and that they "would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Id.* at 361. Plaintiffs have not met either standard and therefore Deutsche

is entitled to a dismissal of Plaintiffs loan modification claim.

### 4. Lack of Capacity/Ownership/Standing Claim

Again, Deutsche maintains that Plaintiffs lack proper standing. First, Deutsche alleges that Plaintiffs lack standing to challenge the assignment of the mortgage to it by Long Beach. Plaintiffs have argued that Deutsche does not have the legal authority, capacity, or privity to maintain the Property. However, in *Livonia Property Holdings, LLC, v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010), the court held that "a party subject to foreclosure has standing to challenge whether a lender holds record chain of title [however,]...that determination is limited to an examination of the public records." Deutsche argues that the facts in the instant case are analogous to those in *Livonia*, in that there is an admitted record chain of title, and Plaintiffs do not have standing to challenge an assignment which they were not a party to. "[A] litigant who is not a party to an assignment lacks standing to challenge that assignment." *Livonia Prop. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. Supp. 2d 724, 736-37 (E.D. Mich. 2010).

Second, Deutsche alleges that Plaintiffs lack standing to challenge any terms of an unidentified securitization agreement between Long Beach and Deutsche. Plaintiffs make several bare bones allegations, with no supporting evidence. Such allegations and legal conclusions are not accepted as true for purposes of a motion to dismiss. *Ashcroft*, 556 U.S. at 664. ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are nor more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Additionally, Plaintiffs fail to meet the burden

of proof under Michigan law to support their conclusions. Case law has established that mortgagors do not have standing to assert rights under a securitization agreement to which they are not a party. *See Livonia Prop.*, 717 F. Supp. 2d at 747.

Finally, Deutsche maintains that Count III, lack of capacity/ownership/privity, should be dismissed for lack of merit. Plaintiffs argue that Deutsche could not foreclose by advertisement because the assignment of the mortgage from Long Beach to Deutsche was not properly recorded with the Security Exchange Commission ("SEC") or the State of Michigan. However, Plaintiffs' claim is pure speculation, as it states that the assignment "may or may not have been registered," and they cite no Michigan statute that requires such registration. Additionally, Plaintiffs are unable to produce any concrete evidence that Deutsche failed to meet the requirements of foreclosure by advertisement.

### 5. Breach of Contract Claim

On September 29, 2011, JPMorgan gave Plaintiffs a Trial Period Plan ("TPP"). Plaintiffs allege that they accepted the offer and the conditions of the TPP, but JPMorgan did not provide them with the promised loan modification. Deutsche foreclosed on the Property soon after. Deutsche maintains that Plaintiffs' breach of contract claims should be dismissed because they are barred by the Michigan Financial Statute of Frauds, which makes any financial institutions's agreement to modify repayment void unless it is "in writing and signed with an authorized signature by the financial institution." MICH. COMP. LAWS § 566.132.[2] Additionally, while Plaintiffs allege that Defendants breached the TPP and they

---

[2] This applies to any claim brought against a financial institution seeking to "enforce the terms of an oral promise to waive a loan provision." *Rummell v. Vantium Capital Inc.*, No. 12-10952, 2012 WL 2564846, *6 (E.D. Mich. July 2, 2012).

consequently should have received a permanent Home Affordable Mortgage Program ("HAMP") modification after making payments on the TPP,[3] the TPP agreement does not state that the Plaintiffs would automatically receive HAMP if they timely made a TPP payment. Instead, the TPP provided that if the borrowers complied with the trial period plan, then the lender would either give the borrowers a HAMP loan modification or would send written notice that the borrower doesn't qualify for the offer. Plaintiffs do not allege that they did not receive written notice that they did not qualify for the offer, and thus their claim fails.[4]

Plaintiffs argue that a contract exists between the parties as created by an offer and acceptance. However, "to be enforceable, a contract to enter into a future contract must specify all its material and essential terms and leave none to be agreed upon as the result of future negotiations." *Heritage Broad v. Wilson Communications, Inc.*, 170 Mich. App. 812, 819, 428 N.W.2d 784 (1988). Furthermore, "[f]or a promise to loan money in the future to be sufficiently clear and definite, some evidence must exist of the material terms of the loan, including the amount of the loan, the interest rate, and the method of repayment." *State Bank of Standish v. Curry*, 442 Mich. 76, 88, 500 N.W.2d 104 (1993). Any purported "contract" between Plaintiffs and Defendants lacks in the aforementioned required elements. Plaintiffs set forth no meritorious arguments to the contrary.

---

[3] HAMP is a government program established by the Departments of the Treasury & Housing and Urban Development. It lowers monthly mortgages for homeowners who are employed but struggle to make their monthly mortgage payments.

[4] The TPP states: "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the offer."

Moreover, there is no private right of action for Plaintiffs for any breach of promise to provide a HAMP modification. Plaintiffs' breach of contract claim appears to be an alternative attempt to make a HAMP claim. Even if the Court assumes that Deutsche had a duty to provide Plaintiffs with a loan modification, HAMP does not provide a route to seek relief. *Loeffler v. BAC Home Loans Servicing, L.P.*, No: 11-13711, 2012 WL 666750, *4 (E.D. Mich. Feb. 29, 2012). Under HAMP "the Secretary of Treasury 'must *encourage* mortgage servicers to modify loans, [but] the statute does not *require* mortgage servicers to modify loans." *Hart v. Countrywide Home Loans, Inc.*, 735 F. Supp. 2d 741, 747- 48 (2010). Consequently, there is no duty imposed on Deutsche by which the Plaintiffs can seek relief.

Contrary to Plaintiffs' allegations, the TPP was not breached. Plaintiffs have not alleged that they qualified for the loan modification, which is a condition for the receipt of HAMP. Simply failing to provide a HAMP loan modification is not enough to constitute a breach of the TPP. Additionally, and contrary to Plaintiffs' arguments, there is no independent claim in Michigan for breach of duty of good faith and fair dealing. *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476, 666 N.W.2d 271 (2003). Such a claim does not exist because the valid contract prerequisite to such a claim does not exist and Michigan law does not recognize an independent claim for the breach of such a covenant. *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 36, 718 N.W.2d 827 (2006).

### 6. Deceptive Act/Unfair Prejudice Claim

Defendants recognize that Plaintiffs' deceptive act/unfair prejudice claim is based on the belief that they were entitled to, but denied, a loan modification. Plaintiffs state that

Tiffany Arms, the attorney for Deutsche who signed the pertinent documents, must not have had personal knowledge of the facts, because otherwise she would have known that Deutsche was not following through with all of the requirements laid out under MICH. COMP. LAWS § 600.3205. However, as previously addressed, there is nothing under the law that entitles the Plaintiffs to a loan modification. Deutsche maintains that Plaintiffs are again making bare bones allegations and legal conclusions, and fail to meet their burden of proof. While there is no Michigan law that recognizes a deceptive act and/or unfair practice as a separate tort, this Court specifically recognized that such claims are <u>not</u> recognized causes of action. *Dingman v. OneWest Bank, FSB*, 859 F. Supp. 2d 912, 921 (E.D. Mich. 212). Consequently, Plaintiffs have failed to state a claim upon which relief can be granted.

In the event Plaintiffs are attempting to state a claim under the Michigan Consumer Protection Act ("MCPA"), Deutsche argues that such a claim must fail because the MCPA does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under authority of this state." MICH. COMP. LAWS § 445.904(1). Michigan courts have specifically applied this exemption to licensed lenders. In *Newton v. West*, 262 Mich. App. 434, 439, 686 N.W.2d 491 (2004), the court held that the residential mortgage loan transactions at issue fit within the MCPA exception because the defendant was a federal savings bank operating under the Michigan Savings Bank Act and was specifically authorized to make residential mortgage loans. The same out come is required herein since Deutsche is exempt from the MCPA.

### 7. Injunction

When evaluating injunctive relief, a court should consider: (1) a plaintiffs likelihood

of success as to the merits of the case, (2) a balancing of the harm to the plaintiffs or the defendant, (3) whether or not there is irreparable harm, and (4) what action is in the public interest. Deutsche argues that Plaintiffs are not entitled to injunctive relief. In support, Deutsche points to 7 additional factors that a court may consider in evaluating a party's request for a permanent injunction under *Kernen v. Homestead Dev. Co.*, 232 Mich. App. 503, 591 N.W.2d 369 (1998): (a) the nature of the interest to be protected; (b) the relative adequacy to the plaintiff of injunction and of other remedies; (c) any unreasonable delay by the plaintiff in brining suit, (d) any related misconduct on the part of the plaintiff; (e) the relative hardship likely to result to defendant if an injunction is granted and to plaintiff if it is denied; (f) the interests of third persons and of the public, and (g) the practicability of framing and enforcing the order or judgment. *Id.* at 514. Under a *Kernen* analysis, the court must balance the benefit of an injunction to the plaintiff against the inconvenience and damage to the defendant. *Id.*

Deutsche maintains that under the present circumstances, it would be contrary to the interests of justice to grant an injunction barring the Plaintiffs from being evicted from the property, as: (a) Plaintiffs lack any right to the Property following the expiration of the redemption period. Regardless of any violations under MICH. COMP. LAWS § 600.3205, the Plaintiffs are still subject to eviction under MICH. COMP. LAWS § 600.3101, (b) Plaintiffs have failed to state any claim for relief, (c) Plaintiffs are not entitled to an injunction because of their unreasonable delay in filing this lawsuit, (d) Plaintiffs have committed at least 2 kinds of misconduct related to this matter - first, failing to fulfill their obligations under the mortgage, and second, holding over after the expiration of the redemption period, (e) and an injunction would harm both Deutsche, the owner of the

Property, by preventing it from taking possession of its rightfully-owned land, as well as the general public by establishing a practice of awarding property to defaulting borrowers based on alleged violations of MICH. COMP. LAWS § 600.3205. Consequently, lenders will arguably become much more wary and less likely to extend mortgage loans to prospective homeowners.

While the Plaintiffs interpret the facts in their favor, alleging success on the merits and irreparable harm, all of Plaintiffs' claims fail as a matter of law. Moreover, Deutsche points out that any irreparable harm Plaintiffs experience is the result of their own wrongdoing and failure to fulfill their obligations under the mortgage. Additionally, Deutsche is currently covering all of the occupational costs related to the Property. Lastly, the Court is persuaded that it is not in the public interest for the Plaintiffs to be permitted to remain on a property which they have not made a payment on in years. Plaintiffs have failed to meet their burden in establishing entitlement to injunctive relief, and their request is therefore denied.

### C. Defendant JPMorgan's Motion for Summary Judgment

JPMorgan's Motion for Summary Judgment raises the exact same issues as addressed in Deutsche's Motion to Dismiss. JPMorgan specifically argues that Plaintiffs (1) fail to state a valid claim to set aside foreclosure, as their Quiet Title Claim fails, their statutory redemption period has expired, and Deutsche is the proper owner of the Property, (2) Plaintiffs' claims for breach of the TPP and specific performance are barred as a matter of law, and (3) the Plaintiffs' are not entitled to injunctive relief. Based on the prior analysis conducted on Deutsche's Motion, JPMorgan's Motion for Summary Judgment is granted.

## IV. CONCLUSION

For the reasons stated above, the Court will GRANT Deutsche's Motion to Dismiss [#15] and GRANT JPMorgan's Motion for Summary Judgment [#28].

SO ORDERED.

Dated: February 28, 2014 /s/Gershwin A Drain
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
February 28, 2014, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk